Caroline McRae is here for the appellant, Lopez. Tyler Ann Lee is here for the government. And Ms. McRae, you may begin when you're ready. Good morning. May it please the court. Caroline McRae with the Federal Defender's Office on behalf of Mr. Lopez. I would like to focus my argument this morning on two issues. First is that remand is necessary in this case because the district court erred when it denied Mr. Lopez the third point for acceptance of responsibility under Guideline Section 3E1.1B. The government has conceded that it was error to deny Mr. Lopez this third point for acceptance of responsibility because there was an insufficient basis to deny that third point. So his sentence was procedurally unreasonable. The government cannot show that this error was harmless. They have not met the standard that this court has set forth in Keene and Goodman. In those your honor. However, what's the test for harmlessness in the sentencing context? It would be whether or not there's a reason to believe that it would have made a difference had they had the error not occurred. Right. And what Keene says is one way to do that is if the court explicitly says, even if I got the calculation wrong, I would have imposed the same sentence. But that's not the only way that we've approved, right? We've approved other ways, too. That's correct, your honor. So what do we do? So here, as I see it, what the government argues is it's harmless. And they give two things. They get two sort of data points. One is that when this third point thing came up, the district court was taken by surprise and said the district judge said, I may take that into account when it comes time for sentencing. And then I'm paraphrasing. I know that's not the exact quote. And then when it came time for sentencing in laying out the three five five three A factors, the district court then says, in addition, I am also considering that the third point wasn't given here as part of my analysis. Why is that not a pretty darn good indication that the sentence would have been the same whether the third point was given or not given? Well, I think, your honor, that the court has established a very clear standard for district courts. If they if they want to, if a guideline issue did not make any difference in their calculation of the sentence and the standard that the court has set forth in Keene and Goldman is a very clear standard for district courts to follow by just making that statement that it in fact did not influence their sentencing decision. The district court didn't articulate that in sentencing. He didn't articulate that he would be giving the sentence regardless of whether or not he gave a third point or not correct. There was no indication of that. Correct. He made two statements. As Judge Luck indicated when he initially denied the third point, he said, I think I may. I may not. No, he listed it as one of the things that he was considering under the 3553A factors, but he did not say what weight he was considering it with, and he certainly did not say that he would have ended up at the same sentence for Mr. Lopez despite the issue or the change in his guidelines that this would have created. Because of that. If it's vacated and remanded, he could get a higher sentence, couldn't he? Seems like he did pretty good. The guideline, of course, with the enhancements was 63 to 78 months, and the judge gave him 48 months. He did pretty good in the district court. Does he want to run the risk of a higher sentence if the sentence is vacated and remanded? Well, Your Honor, certainly the court can take, if the case is remanded, Mr. Lopez understands that the sentence could be increased. However, the error in this case for the guidelines related not just to that third point, but to the other issue that I'd like to address this morning, which is the loss calculation. Can you deal with the question that we sent notice to counsel on and address that for us? Yes, Your Honor. This court has asked counsel to address the impact that 2X1.1 has on whether or not reversal is required and for the court relying on the commentary to 2B1.1. And what we would set forth is that the standard in 2X1.1 is very different than 2B1.1's commentary. 2X1.1 allows the district court to enhance a sentence based on inchoate offense conduct for conspiracies, attempts, and solicitations. So what it allows the court to do is to do an analysis about this intended offense conduct that did not actually play out in the offense. Because the court is that 2X1.1 sets forth a different standard than the intended loss in 2B1.1. Let's be clear. Put the commentary aside. So I agree with you. We cannot look to the commentary for the purpose of this discussion. Doesn't 2X1.1 suggest, though, that we look to the intended conduct, as you said, of the inchoate crime. And here, it was certainly intended as part of the conspiracy to do two point something million dollars worth of fraud, right? Well, I think that that's the issue. Even though 2X1.1 uses the term intended and the commentary to 2B1.1. Forget the commentary. The intended that is used in 2X1.1 is a different, it's not just inserting intended in front of a specific offense characteristic. Well, certainly I agree. But looking at the intended, what the intent of this conspiracy was, it was to get two point something million dollars in health care money and PPP or some sort of CARES Act money. Well, the intended inchoate conduct under 2X1.1 would not just be demonstrated by the aggregate billing because the judge would have to determine to a reasonable certainty what was the actual inchoate plan for the conspiracy. Didn't the judge find that here by finding that it was intended for them to have, and I think that's unobjected to in the PSI as I understand it, we intended to a loan for this much so I can get loan proceeds of this much, right? It wasn't dealing with the intent that 2X1.1 talks about. It was dealing with intended loss. So you're just, I get that, but it's hard. I'm having a hard time understanding that how it'd be different for purposes of findings of fact. But are you saying then that you want us to remand to the district court to then make findings under 2X1.1? Yes. To the extent that the court believes that 2X1.1 allows the district court to enhance based on unrealized losses, then remand would be appropriate so that the district court could apply that standard in the first instance. What do we make of Walker, the first DCA, the first circuit decision? Walker is distinguishable from what happened in Mr. Lopez's case because in Walker the district court actually applied 2X1.1. So the district court in Walker had determined if Mr. Walker's inchoate conspiracy to commit Hobbs Act robbery had actually been fulfilled, what would the actual loss to the victim have been? So your argument you're making to us, and I think I'm following you, is you're right, 2X1.1 should apply here. The district court's error, in fact, was not applying 2X1.1, and it should be given the opportunity in the first instance to do that. Is that what you're saying to us? Well, I think that the error was relying on the intended conduct, but to the extent that the court believes that 2X1.1 should have been applied in... Well, you agree it should have. I mean, tell me an argument for why it shouldn't have, but as I read the guidelines, I think it's 1B1.2 or 3 requires that for conspiracy offenses you look to 2X1.1, and then 2X1.1 says you look to the base offense level plus whatever intended conduct would have been there for the offense, right? I believe because Mr. Lopez was convicted of both conspiracy and substantive offenses that you would look both to the conspiracy guideline for 2X1.1 and the substantive offense guideline for 2B1.1. Agreed. So at least with regard to conspiracy counts, you would agree that the district court erred by not doing that. Well, the court applied 2B1.1, which it can under grouping, because all of the counts of conviction were grouped. But to group, you need to actually do both of them right. So you agree that the error here was not doing the right calculation for the conspiracy offenses. Is that what you're telling us? That would only be error if it would have resulted in a higher range, and then the would have, because likely intended conduct would have included the 2.1 number instead of the lower number. Well, it would depend on what inchoate offense conduct the court found to a reasonable certainty. 2X1.1 versus 2B1.1's commentary could result in higher or lower numbers depending on the factual finding. I think that's in theory correct. I'm not sure that'd be correct here, but I think in theory you're probably right. But that still would tell us that we have to back to the district court to do the right calculation to see for grouping which one would be higher or lower and which one to apply, right? To the extent that the court thinks that the court should have considered that intended offense conduct, yes. Give me an argument for why it shouldn't have. Well, I would agree, Your Honor. It should compare the two guidelines results. I appreciate that. Thank you. And the district court, by applying the commentary 2B1.1 aired in this case, the loss table in 2B1.1 is unambiguous and loss applies to actual loss, not some intended loss, some unlikely or impossible loss. And it's certainly the commentary's attempt to define loss to include something beyond actual loss is not within the zone of ambiguity. Because of all that, the district court aired by relying on the commentary to do 2B1.1 and assuming that the aggregate amount billed to the health care provider was the loss that should be applied under 2B1.1's loss table. Do we agree, though, that if we have to look to the commentary because the statute is ambiguous, then you lose, right? Well, even if the after applying all the tools of construction, then that commentary would still have to fall within that zone of ambiguity that the court has identified. And the commentary goes beyond the zone of ambiguity that the government has identified. It goes beyond just identifying or it goes beyond clarifying if loss is referring to non-economic or economic offenses. And it I see that my time has expired. We determined that the guideline is ambiguous and we do look to the commentary. Can we take into consideration the recent amendments to the federal sentencing guidelines concerning Medicare and health care fraud, which instructs the courts to apply the higher of the actual loss suffered by the victim or the intended loss? I'm not quite sure what the court is referring to. I apologize, Your Honor. Thank you. Thank you. Ms. McRae for the government. Good morning. Excuse me. Good morning, Your Honors, and may it please the court. Tyler Lee for the United States. I'd like to start by addressing Section 2X1.1. The record here supports the district court. Can you start by addressing the point where the government concedes that it was error to deny the third point? Harmlessness, Your Honor. Yes, I can address that. So as Judge Jelk recognized, keen is not the only way for the court to find harmlessness here. The inquiry is whether the I guess my question really is to the fact that why don't you just have a concession of error? I mean, there was no reason for the government to deny that third point, correct? Correct, Your Honor. Not on this record, right? So why don't you just have a confession of error on that point? On the sentencing point, Your Honor? Yes. Because the one point miscalculation here was harmless because the court indicated that it would have imposed the same sentence regardless. Where did the district court articulate in the transcript that they would have imposed the sentence regardless if they had done the third point? Tell me where. Show me where in the record. The strongest evidence, Your Honor, in the record. I'm sorry. The strongest evidence is that either is articulated by the district court or it's not. Where did the district court articulate that? The district court did not. They did not. And that's why the government should have done a confession of error on this point. That's it. I don't have anything further to say on this thing. You can move on to another issue. Yes, Your Honor. I would just I would resist the keen prescribes a specific magic words that the court is required to to pronounce. If the record here indicates that the district court would have imposed the same sentence, which it did, particularly since the court, I would emphasize that the court originally calculated the guidelines range with that third point here. So it was aware of what the alternative ranges were here and then stated it was considering the fact that the government didn't object. But unless there are further questions on the sentencing point, I'll turn back to section 2x1.1, which, as I mentioned, supports here that the district court correctly enhanced Lopez's offense level pursuant to that guideline. And that's regardless of whether section section 2b1.1 definition of loss includes intended loss. And that's because 2x1.1, the inchoate offense guideline, requires the court to look to the base offense level for the substantive offense here, fraud, and then to add any adjustments from that guideline for any intended offense conduct that can be established with reasonable certainty. Your opposing counsel says that, yes, that's right. But here, the district court clearly did not apply 2x1.1. You would agree with that, right? I'm not sure that there's a clear statement in sentencing that the district court. Let's do it. Let's look at it this way. Let's break it down this way. In the PSI, there's no reference to 2x1.1, right? There is, your honor. And in fact, at paragraph 33 of the PSI, the probation explicitly states that it's making the offense calculation, quote, by way of 2x1.1. So all of the counts, including the conspiracy here, were grouped for sentencing purposes. And the calculation was made applying 2x1.1 and applying 2x1.1's textual directive to consider intended loss, which directs the court to 2b1.1. That's stretching a lot from that reference. But is your argument to us that by referencing that and by the district court adopting the calculation in the PSI, I think without objection from the parties essentially, other than the intended loss objection and the 3rd.1, that that means the district court did, although it didn't say a word about it, and said it was applying our commentary law and applied precedent dealing with the commentary, despite all of that, the district court in fact was looking at 2x1.1? I think so, your honor. And paragraph 33 of the 1.1. But section 2x1.1. But you agree with me, the district court in discussing this issue, when the objection came up, only looked to the commentary and to our binding precedent at the time, pre Dupree, which bound the district court to apply intended loss as related by the commentary, right? That's correct, your honor. So it's hard for hard for me to be able to say that the district court meaningfully applied 2x1.1 in the way that we're talking about now. In other words, in looking at whether the language of 2x1.1 applied to what was intended by this particular conspiracy, right? I see your honor's point, but I would I would emphasize making a point that your opposing counsel made the point I'm asking you about it. I think this court can affirm on any reason that's supported by the record, which is certainly supported by the PSI here. The fact that also that Lopez did not object to this calculation and does not now challenge this calculation as to intended loss on appeal supports that the district court correctly enhanced the offense level. Should is there is there daylight? Your opposing counsel suggests that there is legal daylight, even if it doesn't necessarily equal a different sentence in this case. But there is legal daylight in the general sense between in what intended loss is defined in the guideline. And it has a very technical definition versus what's reasonably certain to be intended conduct for a conspiracy under 2x1.1. That that makes sense to me that those two things are a little different, are they not? I think they're only a little different to the extent that the sort of reasonable certainty provision in the inchoate offense guideline reflects that, you know, in an inchoate offense, there may be some conduct that was intended but not completed. And so there's this this directive to make sure that it's established. Let me be let me put a finer point on it. The intended loss guideline or the commentary suggests that intended loss applies to even things that there could not be possibly recovery from. That would seem to be different than conduct that's intended to a reasonable degree of certainty under a conspiracy. Right. Those are different things, aren't they? I don't I don't think so, Your Honor. I think that if even if the law the intended loss was impossible, as the commentary suggests, if that intent could be established with reasonable certainty pursuant to 2x1.1, then the adjustment should be applied. I guess what I'm saying is let me give a hypothetical then to explain it. What if there was no certainty and the conspiracy understood to reasonably uncertainty that that was not intended because they knew their Medicare experts, these guys, and they knew there was no way they were getting anything more than about 50 percent on the dollar for what they build, but they build it under the intended loss guideline, they would get the top amount, whatever they build, even though under 2x1.1, that wouldn't necessarily be intended. Under that hypothetical, I'd be right, right? I'm sorry, Your Honor. Could you repeat that? Do my best. And I'm sorry if I wasn't clear. So imagine a conspiracy made up of Medicare experts that know for a fact that they are not going to collect anything more than 50 cents on the dollar they build a Medicare. Under 2b1.1 in the commentary, they would get the top billing, whatever they build. But under 2x1.1, it would seem that the intended conduct of the conspiracy to a reasonable certainty was not to actually get that top amount, but was instead to only get 50 percent since they knew clearly that that was all they were going to get, right? I think that's possible, Your Honor, under the reasonable certainty provision. But if that's possible, I guess my sorry to interrupt, but if that's possible, doesn't that mean then that there's daylight between those two things and we have to allow a court that didn't apply one to go ahead and do it, even if I think in this case the result actually would be the same applying one versus the other? Potentially, Your Honor, but I would emphasize here that this case is very different from the hypothetical you presented in that Lopez does not contest the intended loss amount here. There's no dispute that he and his co-conspirators build Medicare at this amount and that he sought the small business administration loan as well. But section 2x1.1 also reinforces that loss in section 2b1.1 unambiguously includes intended loss, particularly looking to the structural context of the guidelines. And when we read 2b1.1 in the context of the sentencing guidelines and interrelated provisions, it makes clear that loss includes intended loss. So the first, again, as I mentioned, is 2x1.1, which directs the court to add adjustments for intended offense conduct. And Walker, the First Circuit case, supports this. And Lopez's reading would actually create a problem here, where if we assume that the fraud guideline covers intended loss only, then the offense level for a fraud conspiracy or a fraud attempt could actually be higher than for the completed offense, depending on the timing of when the defendant was caught. That's true, isn't it? Under Walker's reading, that's true. Under Walker's reading, no, I'm not sure that it is, Your Honor, because only if we assume that actual loss is actual loss only, which Walker did not hold. That's true. It said it didn't have to reach the issue. It didn't have to reach the bank's issue because of this. And maybe we should do the same thing. But if a court holds, as banks did, that loss is only actual loss, then it is true what you've just said, that a conspiracy loss amount, which incorporates intent, could be more than that which is actualized for a non-NCOA defense, right? That's correct, Your Honor. And that's why we think that Banks' reading is a problem, because that's at odds with the basic principle that we shouldn't punish NCOA offenses for more than a sentence. Isn't it pretty darn good evidence that where it includes intent, the guideline drafters know how to include intended conduct for intended offenses versus where they don't do that and explicitly didn't do that, especially where the history here is that it originally included intent in the 87 version and dropped it along in the later versions? I don't think so, Your Honor, because 1B1.3, for example, the relevant conduct guideline also reinforces this idea that courts should consider intended harm generally. Unless otherwise indicated by the guideline. That's the beginning of the sentence you're quoting from, right? Correct, Your Honor. So if the guideline tells us something different, then we don't look to that language of incorporating all relevant conduct, right? Right, but we think that 2B1.1 does not tell us anything different because the history and purpose of 2B1.1 makes clear that loss should include intended loss. It has defined loss as including intended loss since the guidelines were first issued, and it states in the background commentary that the Commission's goal is for defendant's sentences to reflect... When it was first issued, as I understand it, and correct me if I'm wrong about this history, the intent part was in the actual body of the guidelines, and in later versions, that was dropped and then added to the commentary as part of the definition of loss. Is that right? That's correct, Your Honor. Isn't that a pretty good indication that that's not what at least the text supports? I don't think so, Your Honor, because previously the Commission was operating under a much higher level of deference where the commentary was much more controlling on courts, and so I think the Commission would have assumed that the commentary there was a permissible interpretation and that it would receive deference. I would also note that the Commission appears likely to resolve this issue once again by moving the definition of actual or intended loss back to the text of the guideline. But turning back to the Commission's goal, as mentioned in the commentary, loss is really a measure here of the defendant's culpability, and in criminal law, the defendant's intent is key to that culpability. And to pre, did we look at the commentary to define the goal of the guideline? I'm not sure, Your Honor. I think the answer to that is no. Probably no, because Dupree found there was a conflict between the basic text. Isn't that the problem? In other words, to look at the thing that you're interpreting to say that it articulates the goal would sort of defeat the purpose of what we're trying to do, right? Well, Kaiser requires, and now Dupree, for the sentencing guidelines that the court apply all the traditional tools of statutory construction, which includes not just text but also structure, history, and purpose. So the court is permitted to look at history and purpose to make this determination. And we would submit that the plain text here alone, just the word loss standing alone, cannot resolve this issue, because loss can have a range of meanings as courts have recognized. And even Lopez- Any of those range of meanings, so I've looked at the sort of the long string side of definitions that y'all have provided. It doesn't seem that any of those would incorporate intended loss, would they? You're right that loss is not like easily defined, but whatever it is defined as, I'm having trouble finding intended loss being part of that. I would point the court to the Black's Law Dictionary, which does include unrealized loss as a type of loss, and that's a loss that only exists in theoretical terms. That's from the 2019 version, right? Yes, in the same way that intended loss. Isn't that a problem? In other words, don't we look at the when the term was first used in the guidelines, which I think goes way back into the later early or mid-90s when this was sort of disaggregated from its original language to what it is then. Isn't that the relevant time frame that we look at meaning? Yes, Your Honor, under dictionary definitions, but I would still resist the issue that loss, the idea that loss must exclude intended loss. And in fact, no court of appeals has excluded intended loss. But most, if you were just talking about plain meaning, most people in the audience would, if you stopped them and asked them, what do you think the definition of loss is, they're going to say actual loss. They're not going to say unrealized loss, like it's an IRS definition. That may be true for sort of the lay meaning of the term, Your Honor, but the context here shows that the sentencing guidelines use loss in a specific sense to measure culpability. And loss cannot be limited to actual loss in all contexts, because otherwise the term actual loss would be a redundancy. And as I said, no court of appeals has actually excluded intended loss from the meaning of loss. Even banks recognize that in some contexts, loss could mean intended loss. And again, we have to look to the context here, because as Lopez himself acknowledges, we have to at least look to the context of the dollar amounts and the loss. The issue here is, this is really a word that's used that really has a lot of potential different meanings. So is it really not ambiguous, this definition or this use of this word in the guideline? I think if we look just to the text, it's not clear what loss standing alone means, but the court has to exhaust all the traditional tools before determining that the term is intended loss. But even if loss is ambiguous, the commission's interpretation here is reasonable and entitled to deference. Isn't the government's better argument that the term loss is ambiguous, and not that it is unambiguous, so that we can look to the commentary, because there are all these different definitions of loss in the various precedents that guide us, as well as the dictionaries? Isn't the government's better argument that loss is ambiguous, because it lacks the word actual in front of the word loss? Yes, Your Honor. I think regardless of whether this court finds loss is ambiguous or not, the government wins on this issue, because loss does include intended loss. If loss is indeed ambiguous, then the commission's interpretation is entitled to deference due to its official character, the fact that it implicates the commission's substantive expertise, and reflects the commission's fair and considered judgment. All right. Thank you. Thank you. Thank you, Ms. Lee. Ms. McCray, you've reserved some time for rebuttal. Thank you. As Judge Luck pointed out, I think that the court can look to the language that the drafters of the guidelines have used in other provisions that demonstrate that the Sentencing Commission understands how to include intended conduct in the language of a guideline when that is, in fact, their intent. We see that in the recent additions to B1.1. There are now two additional provisions, B14, which talks about an enhancement based on whether or not the defendant knew or intended the misappropriation of a trade secret would have international effects. Similarly, the new B18 shows that an enhancement should be applied if the offense involved an intent to obtain impersonal information. And so the Sentencing Commission certainly knows how to use intent within the language of the specific offense characteristic, if that is, indeed, how the offense characteristic is to be applied. The government's reading of relying on that relevant conduct section that they referred to 1B1.3 would render other guideline provisions superfluous. And so, for instance, when you look at 2C1.3, this is the guideline that deals with the payment or receipt of unauthorized compensation. And there, there's a specific offense characteristic if the offense involved actual or planned harm to the government. And so if there was no reason to add the language about planned, that guideline provision could certainly have just talked about harm to the government. But that shows that the drafters understand that there is a difference between the actual offense conduct that occurs and the intended offense conduct. And by using the term loss in 2B1.1, any plain meaning of that language would show that the guideline is unambiguous and that it applies solely to actual loss. So this court should not provide any deference to the commentary that attempts to expand that to include not just the actual loss referenced in the guideline, but also the intended loss. I would also, turning back to 2X1.1 and Walker, just like to sort of highlight that daylight between the 2X1.1 intended offense conduct and intended loss under 2B1.1's commentary, because I your opposing counsel's argument that the PSI did reference 2X1.1 as sort of the pass-through to calculate the guidelines and that that calculation was adopted by the district court, although there were these two objections that were there, but that sort of framework was adopted by the district court. Can we not say then that the district court actually did consider intended conduct in rendering its decision? I don't think that you can, your honor, because when you look at that language in the PSI, it will just state the loss was. And so it's actually through the objections to the PSI, the government's response to those objections, and then the way that the court addressed it at sentencing that we can see where it was that the PSI was saying that that was the loss. And it was clear all along, you see in the government's response to Mr. Lopez's objections, that that should be the loss amount that the court should apply based on intended loss under 2B1.1's commentary. And that is what was not objected to. That under, if this court finds that the commentary to 2B1.1 deserves deference, then that was the intended loss under 2B1.1 in this case. The court is correct, Mr. Lopez has not objected to that. But that's different than saying that the court actually performed the 2X1.1 analysis and the intended offense conduct under 2X1.1 would have been the same thing as the intent. No, but I mean that's pretty darn close. If you're stipulating that, yeah, this is what we intended to do, but you can't look to intended conduct for 2B1.1, why would that, that stipulation I know might not be the right word, but why is that agreement or understanding or lack of objection not very relevant to what we're looking at what the intended conduct was? Because it wasn't that Mr. Lopez didn't object that that's what he intended to do. He didn't object that that is the calculation of intended loss under 2B1.1. When you look at, for example, the Walker case from the First Circuit, in that case, because the district court actually was applying 2X1.1, it determined to a reasonable certainty what would the loss have been had the intended offense conduct occurred. Because the victim had actually $40,000 worth of merchandise in his house, the district court found to a reasonable certainty that an actual $40,000 loss would have occurred. What intended loss under 2B1.1 commentary allows the court to do is if those individuals believed that the house contained $4 million of merchandise. If we remand, are you going to make a serious argument that there isn't a reasonable, the evidentiary, that the evidence does not support a reasonable certainty that this was the intended conduct? Well, yes, your honor, because as the court pointed, it's very common in these health care fraud schemes for the individuals to understand that the full amount billed will not actually be what is paid. These are offenses that occur over a period of time, and so even as the subsequent bills are going in, it's already understood what is and is not being paid out on the previous bills. And so there is a big difference in these fraud cases, these health care fraud cases, between 2B1.1's intended loss and what was the actual intended offense conduct under 2X1.1. I see my time has expired. Thank you. Thank you, counsel.